## No. 8091.

OLYMPE BOISSE AND HUSBAND VS. HANNAH P. DICKSON, ADMINISTRATRIX, ET AL.

A receipt for payment in full of his rights in his father's succession, given by an heir to the administrator, cannot be contested by a party who subsequently becomes a creditor of the heir. All that such creditor can do, is to require proof of the date and genuineness of the receipt.

When this Court has decided some of the issues of a case, and remanded it for further evidence upon other points; and when the case comes up again in this Court, on appeal from the judgment of the lower Court in the second trial, the questions originally decided will not be re-opened and this Court will only review the issues upon which the case was remanded.

APPEAL from the Second Judicial District Court, parish of Bossier. *Drew, J.*

Land & Land for Plaintiff and Appellee.

Nutt & Leonard for Defendants and Appellees.

The opinion of the Court was delivered by

TODD, J. This case was argued and submitted at the recent term of this Court at Shreveport, and, by agreement of counsel, held under advisement to be decided at this place.

This is the second time this case has been before this Court on appeal.

It was first tried in the Parish Court of Bossier, and an appeal taken from the judgment rendered by that court; and, by a decree of this Court, rendered at this place on the 27th of May, 1878, it was remanded for another trial. It was again tried in the District Court of Bossier, which had, in the meantime, superseded the parish court, and from the judgment of that court, the plaintiffs, who were the appellants in the previous appeal, have again appealed to this Court.

As there is an issue between the counsel representing the parties litigant with reference to what was decided in the former appeal and what remains open for our decision on the present appeal, it becomes necessary that we should first critically review the pleadings, proceedings and previous decree of our predecessors in the case.

The plaintiff, Olympe Boisse, assisted by her husband, filed her petition in the Parish Court of Bossier, on the 14th of August, 1875, in which she alleged in substance :

That in 1872 she obtained in the Circuit Court of the United States, sitting at New Orleans, a judgment against Mary E. Dickson, then wife of Gen. Gideon J. Pillow, for $4231 40, with interest.

That under a writ of *fi. fa.*, issued on the judgment, she had purchased at a marshal's sale "all the right, title, interest, claim and

demand of the said Mary E. Dickson in the succession of her father, Michael Dickson, the same being the undivided one-seventh interest in all the movables, immovables, rights and credits belonging to and composing said succession."

That the property of said succession was in the possession of the defendant, Mrs. Hannah P. Dickson, the administratrix of the succession and partner in community with the deceased, and had been since his death in 1865, and that the administratrix had never rendered any account of her administration.

That the plaintiff was owner of the entire interest of Mary E. Dickson in the succession of her father, and as such owner, had the right to require an account from the administratrix, "so as to show the residuum, after paying the debts and. charges, to which the heirs are entitled, and to compel her to give bond as usufructuary."

The petition concluded with a prayer that the administratrix be cited, that she be ordered to account, and that she be required to give bond as usufructuary. This was the entire relief asked for. Subsequently an amended petition was filed, praying that all the heirs be cited, which was done.

The administratrix was ordered to render her account, and in obedience to the order the account was rendered.

The account was opposed by the plaintiff and some of the heirs.

The administratrix's answer was substantially :

1. A general denial.

2. A special denial of any interest in the succession being owned by Mary E. Dickson at the time of the alleged seizure of her interest by the marshal, and a denial that plaintiff acquired any "interest in the succession by the alleged sale."

Mary E. Dickson and her husband, made parties through a *curator ad hoc*, further allege in their answer, that the marshal's sale was a nullity for various reasons urged.

The Parish Judge decided in effect :

1. That the marshal's sale was a valid one, and that the plaintiff had acquired whatever interest Mrs. Pillow (Mary E. Dickson) had at the time of the seizure in the succession of Michael Dickson, but that before the seizure was made she, Mrs. Pillow, had received more than her share or interest in the cotton belonging to the succession, which constituted nearly all the movable property of value belonging thereto.

2. That the defendant and administratrix was liable for a considerable quantity of cotton and other movable effects used, wasted and lost, for which judgment was rendered against her, sustaining thus the opposition in part.

3. That plaintiff was entitled to demand a bond from the defendant, Hannah P. Dickson, as usufructuary and widow in community.

From this judgment the plaintiff appealed, and the defendant, Hannah P. Dickson, in answer to the appeal, prayed that the judgment, in so far as it was in favor of the plaintiff and against the defendant, be reversed. This Court reversed the judgment in favor of the plaintiff and remanded the case for further proceedings. The plaintiff applied for a rehearing, and the Court, in rendering its opinion on the rehearing, reiterated its conclusions on the several issues discussed in the first opinion, and refused to set aside its first decree.

The case was again tried in the District Court, and from a judgment therein rendered in favor of the defendant, the plaintiff has taken her present appeal.

On the trial of this second appeal before this Court, the able and distinguished counsel who represented the plaintiff orally and by brief, argued *all* the legal questions raised by the original pleadings in the case —the same questions they had discussed on the trial of the previous appeal and in their application for a rehearing—and they insist that all these questions are *res novæ*, still undecided, and still open for our decision. The large interests involved and the high respect we entertain for the counsel, their experience and legal learning, as well as in consideration of the zeal and earnestness with which their views have been pressed upon us, have induced us to scrutinize closely the opinions rendered by our predecessors, so as to ascertain with certainty what has and what has not been adjudged by the previous decree; and with this object we shall proceed to quote from these opinions, and thus show all the questions and issues that have been passed upon and settled by them, and then take up such as are left for our decision.

We will note here that Mary E. Dickson (Mrs. Pillow) is called in these previous proceedings Mrs. Trigg, the name by which she was known before her marriage to Gen. Pillow, and by that name we shall continue to designate her.

First—The Court held that the marshal's sale was not a nullity for the defects in the proceedings alleged by the parties opposing it.

On this point, Mr. Justice DeBlanc, who was the organ of the Court in the first opinion rendered, says:

" There was no actual seizure of any specific property, but a seizure of Mrs. Trigg's interest in her parent's estate, and that interest was not and could not have been reduced to possession. The fact remains that Mrs. Trigg's (Pillow's) inheritance was seized, advertised for sale and sold."

Second—It was alleged in the answer that Mrs. Trigg, before any seizure was made by the marshal, had received more than her interest

in her father's estate, and relied on a receipt given by this heir, in which she acknowledges to have received payment in full of her share or interest in the succession.

The plaintiff's counsel contended that this receipt only evidenced a sale or transfer of this interest by Mrs. Trigg and her mother, Mrs. Hannah P. Dickson, the administratrix, and, inasmuch as this writing had never been recorded prior to the seizure, it was without effect against the plaintiff, the seizing creditor.

On this point the Court held the following language :

" In vain would it be contended that plaintiff's right to inquire into and annul any real transaction between Mrs. Trigg and her parents, accrued before plaintiff became a creditor of Mrs. Trigg, before the surviving parent was legally informed of the existence of appellant's claim; and Mrs. Widow Dickson should have been allowed to prove what she has paid to, what was taken and received by her daughter from the estate of her father before the seizure of her daughter's inheritance."

" As urged by the plaintiff's counsel, from the date of her husband's death, Mrs. Dickson was entitled to the usufruct of his share in the community of acquets and gains ; but when did she claim and exercise the right to which she was thus entitled ? Was it at the death of her husband ? It was not ; for then the, mutual understanding, the expressed intention of the mother and children, was that the property should continue to be held in common between them ; " that the property and family should remain as the father had left them." Under that understanding the heirs of age took, and were allowed what they wished."

" In an instrument attached to one of the bills of exception, Mrs. Trigg acknowledged, on the 10th of January, 1867, that she had settled with her mother for her rights in her father's estate, and that she had been paid in full for her interest as an heir. In regard to plaintiff, as a third party, this instrument was not of itself an absolute proof of the verity of its naked and unsworn statements, but coupled with the evidence which the widow attempted to adduce to support its contents, it was relevant to, and an important part of, the proof authorized by the issues presented. *It was not* the evidence of a *transfer* of any incorporeal right, but an acknowledgment by Mrs. Trigg, that she had received in cash, in kind, in someway, an amount which she considered equal to her share in the succession of Michael Dickson, and for that legitimate purpose it should have been admitted by the lower court."

And in the opinion delivered on the rehearing, Chief Justice Manning, as the organ of the Court, on this same point, says :

" Her receipt to her mother, the administratrix of the estate, and usufructuary of one-half of the property, is in full payment, and it appears to be conceded in argument if what she has received is chargeable

to her as a part of her share, that it will turn out to be even more than her portion of the succession."

Third—It was, however, insisted by the plaintiff's counsel, that Mrs. Trigg received nothing from the succession of her father. That Mrs. Hannah P. Dickson's usufruct of the cotton and money, with which Mrs. Trigg was paid, was an imperfect usufruct, which vested her, the Widow Dickson, with the absolute ownership of the money and property used in making the payment.

On this point the Court declared :

" The cotton and funds left at the death of Michael Dickson did not, at that date, pass into the exclusive possession and become the absolute property of the widow as usufructuary ; but, by mutual agreement, remained, until they were disposed of and exhausted, in possession of the widow and heirs; and if at the date of the plaintiff's seizure, Mrs. Trigg had already taken her share of said cotton and funds, her creditor cannot expect to be allowed to again exercise an extinguished, a satisfied right."

Fourth—The parish judge by his decree had held Mrs. Dickson, administratrix, liable for a large quantity of cotton alleged to have been wrongfully disposed of and wasted by her. On this point the Court held, quoting their language :

" The evidence does not support the assertion that Mrs. Widow Dickson disposed of twelve hundred bales of cotton belonging to the community, and that she was liable for their value, fixed by the lower court at one hundred and thirty-eight thousand dollars. Of the cotton raised during the war on the three plantations, less that which was stolen, contributed to the Confederate government, or taken by Mrs. Trigg, every bale was shipped to the city, and consigned to only one commission house, there sold for account of the estate of Michael Dickson, and *every cent* of the proceeds carried to the credit of said estate."

Fifth—The judge *a quo* had held that Mrs. Widow Dickson should give bond as usufructuary, and by his decree required her to do so. This Court declared that she could not be compelled to give bond, and that the widow in community, under the law, could be held to no such liability.

Thus it would seem that all the material issues involved in this litigation, raised either directly or indirectly by the pleadings and proceedings in the case, and which were so elaborately re-argued before us in the present appeal, were really passed on and decided in the previous appeal; and we are really at a loss, upon a review of the case, with opinions so plainly pronounced on these issues, to understand why our predecessors should have remanded the case for any other proceedings. And it has required an exhausting scrutiny on our part to ascertain the

exact purpose for which it was remanded. It was only by the closest examination we were enabled to surmise what that purpose was from the following language of the opinion rendered on the rehearing :

"The crucial question, the answer to which determines this controversy, is what did the marshal seize and sell, and what did the plaintiff acquire by the adjudication to her ?  *  *  *  *  *  *

" Our opinion is that the plaintiff has acquired only such interest as Mrs. Trigg, now Mrs. Pillow, had in the succession of her father at the time the seizure was made, and if she had received already a sum of money, or property that produced money equal to the value of her share of the succession, then she had no further interest therein.

" We are asked to put an end to this controversy by a present decree, but there is not complete evidence in the record what the value of the succession was at the time of the seizure of Mrs. Trigg's interest ; and although she has receipted to the administratrix for the whole of her interest, the verity, good faith and correctness of that receipt is open to attack by the plaintiff who may be able to establish that over and above the sums and property already received there is still something now coming to her as an heir of her father. If there be any thing still due her, the plaintiff is entitled to it. If there is not anything due her, the plaintiff has acquired nothing by her purchase."

The case was remanded and again tried, and evidence taken touching the date of this receipt, as also its reality, that is, as to the amounts Mrs. Trigg had really received in money or property from the succession of her father. The court *a qua* held that she had received more than her share of the estate before the marshal's seizure, and rendered a judgment in favor of the defendant rejecting plaintiff's demand, and from that judgment rendered upon that single issue, the present appeal was taken. From this statement it will be plainly seen how very limited is our inquiry.

The receipt, so often referred to, is in the following words and figures :

" NEW ORLEANS, January 10, 1867.

" On settlement this day made with my mother, Mrs. H. P. Dickson, administratrix of the the succession of the estate of Michael Dickson, deceased, I have received payment in full for my interest in said estate, real and personal.

(Signed)                                MARY E. TRIGG."

In view of this writing, which our predecessors, as we have shown, decided to be, not a sale of Mrs. Trigg's interest in the succession to her mother, as contended for by plaintiff's counsel, but a receipt evidencing a settlement between her and her mother as administratrix of the succession, it seems to us that the inquiry, whether in this settlement

Mrs. Trigg received more or less than her rights in the succession, or in fact what she did receive, was utterly idle and immaterial. Mrs. Trigg at the time was a widow, perfectly competent to make any contract or settlement she pleased; competent, if she chose to do so, to make even a renunciation or abandonment of her interest in the succession. And if she did sign this instrument, whether she received more or less than her share, is indeed nothing at all, was a matter of no importance so far as the rights of the plaintiff are concerned; for by making this settlement and giving this acknowledgment that she had received *payment in full* of her rights and interest, from that moment she divested herself of all right, claim and interest in the succession whatever. And inasmuch as it is shown that plaintiff was not then a creditor of Mrs. Trigg, she could not complain of the settlement nor inquire into it beyond requiring proof of its date and genuineness. If Mrs. Trigg had sued for her interest in the succession of her father, that settlement, if real, would have concluded her and barred any recovery. It will not be seriously questioned that the plaintiff, as the transferee of Mrs. Trigg's interest, could possess no greater rights nor have any better claim than Mrs. Trigg herself could set up.

Testimony was taken upon the last trial in the lower court, which established that the receipt was signed on the date it purports to have been, and that Mrs. Trigg actually received the two hundred bales of cotton, which sold for $19,526 60, and which was decided in the first appeal to belong to the succession of Michael Dickson, and also at least ten thousand dollars in money. The money paid her, it appears, belonged to the administratrix, Mrs. Widow Dickson, personally; but this we deem of no consequence. The administratrix was under an obligation to settle with all the heirs of Michael Dickson. If she chose to advance her own funds to make a settlement with any one of the heirs, she had the right to do so; and the advance, thus made, was subject for adjustment in her final settlement with the succession.

We find, then, that the receipt given by Mrs. Trigg was given, and the settlement made of her interest in her father's succession, on the 10th January, 1867, the date expressed in the instrument, and that the receipt was real; that is, it was intended to cover, and did cover, property and money that passed to her.

As we have shown that our inquiry was narrowed down by the action of our predecessors to these single issues, the whole case is disposed of.

We cannot extend our inquiry as urged by the plaintiff's counsel. We must confine our deliberations and actions to the identical questions, for the consideration of which the case was remanded, and which were considered and passed on in the Court *a qua* in the last trial. We

cannot go beyond this, but must consider all the questions so ably discussed by the learned counsel for plaintiff, and to which our attention is so earnestly invited, as absolutely sealed to us.

In the last appeal to this Court the case was tried on all the issues presented by the pleadings, a decree was rendered, an application was made for a rehearing, and in the argument on this application all the original issues in the case were again discussed, and the Court maintained its first decree, which decided all the questions involved, with the exceptions mentioned. For us now to reopen the case as to those questions thus formally decided, would be, in effect, to grant the rehearing refused by our predecessors, and revive issues which, under our rules of practice, had been formally and finally adjudicated.

In the case of Burbank vs. Harris, 30 A. 487, the identical question now presented arose. The case had been once before on appeal, and had been remanded for further proceedings in accordance with the views of the Court declared in its opinion. After another trial in the lower court, it again came up on appeal, and it was claimed by the appellant's counsel in that, as in this case, that all the original questions were open for consideration and review.

In deciding this point the Court first made this statement:

"Here, as they did in the lower court, plaintiffs contend that the judgment heretofore rendered by this Court is final as to defendant's liability for damages, and that this case was remanded to the District Court for the exclusive purpose of ascertaining the amount of the incurred damages. The judgment referred to does declare that the defendant is liable for the destruction of the buildings and their contents, and for the injury done to the machinery. After that declaration by the Court, it pronounced the reversal of the judgment appealed from, and remanded the case to be tried according to law and in accordance *with the views* expressed in the opinion."

Then follows this emphatic language of the Court:

"Every line, every word of a decree has a legal value, and the decree already mentioned, when compared and applied to the declaration, *is liable* for the damages sustained, *closes the door* as to any inquiry relating to the *already determined* liability."

23 A. 611 ; 30 A. 487.

We cannot depart from a rule of practice so well established.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.